# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:10cv140

| | |
|---|---|
| ANCIENT SUN NUTRITION, INC., | )<br>)|
| Plaintiff, | )<br>) |
| Vs. | ) ORDER<br>) |
| OREGON ALGAE, LLC; KVB, LLC;<br>and KVB, LLC, d/b/a Klamath Valley<br>Botanicals, LLC, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER** is before the court upon defendants' Motion to Transfer. Having carefully considered defendants' Motion to Transfer and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Background

#### A. The First Filed Action in the Western District of North Carolina

This action concerns the breakdown of a vendor-vendee relationship in the natural foods business. Plaintiff is in the business of manufacturing branded nutritional products and defendants are in the business of supplying what appears to be a very rare nutritional supplement derived from algae found only in one lake in

Oregon. The claims asserted in this action, and the breakdown of the relationship, all appear to derive from a 2008 contract between plaintiff and defendants, which included requirements and specifications for the products supplied by defendants. It also appears that defendants extended to plaintiff a substantial and unsecured line of credit with which to purchase such products. Complaint, at ¶¶ 13-14. Both the quality of the products received by plaintiff as well the plaintiff's purported refusal to secure the line of credit, or make payment for the allegedly defective product, are at issue.

The thrust of the Complaint appears to concern the alleged quality of the products shipped, id., at ¶¶ 18-23, and that shipping non-conforming goods was in breach of the 2008 contract. Id., at ¶ 23. Plaintiff also contends that defendants tortuously interfered with contracts it had with others by convincing non-party contractors to withhold from plaintiff new product formulations which they were developing for plaintiff under such contract. Id., at ¶ 25. Further, plaintiff alleges that defendants tortuously interfered with contracts it had with other vendors by making false statements. Id., at ¶¶ 27-32. Plaintiffs allege that defendants undertook such actions so as to undermine plaintiff's marketing of its most profitable products, and thereby gain control over the development, sale, and marketing of such products and obtain a competitive advantage. Id., at ¶ 33. Plaintiff has asserted causes of action for breach of contract, wrongful interference with contract, and unfair and deceptive trade

practices. Id., at ¶¶ 33-38.

### B. The Second Filed Action in the District of Oregon

After learning of the instant suit, defendants filed an action in the United States Court for the District of Oregon against plaintiff herein and its founder, Clive Adams, for nonpayment of invoices for algae products.

## II. Defendants' Motion to Transfer

### A. Background

After removing this action from the North Carolina General Court of Justice, Superior Court Division, for Buncombe County, defendants moved for discretionary transfer of this matter to the District of Oregon in accordance with 28, United States Code, Section 1404(a). Unlike a Rule 12(b) motion, which is limited to facts contained in the Complaint, a motion to transfer allows for review of materials submitted outside the pleadings. In this case, counsel for the respective parties have properly supplied the court with well reasoned briefs as well as materials supporting their respective positions.

Among such materials are copies of email messages between top management of plaintiff and defendants. To be frank, such emails clearly show that a very personal relationship developed between these executives over the years, but that such relationship soured for defendants when they unable to secure the substantial line of

credit extended to plaintiff and plaintiff purportedly failed to pay for previously delivered product. Simultaneously, such relationship soured for plaintiff when they purportedly discovered through testing by outside labs that the algae products they were purchasing did not contain the nutritional properties represented to them by defendants. Such alleged failure was, apparently, doubly troublesome for plaintiff inasmuch as it prevented them from manufacturing their nutritional products and it exposed them to potential legal action by customers for making false claims.

Such problems appear, however, only to be the tip of the iceberg, as many more interpersonal issues appear to have formed beneath the surface. The emails reviewed evince that top executives have taken the business set backs very personally and have on numerous occasions threatened litigation.

As to the Motion to Transfer, the respective parties have briefed such motion admirably. The first to file rule as well as the anticipatory filing exception are the lynchpin to resolution of the Motion to Transfer. While initial review would lead one to believe that plaintiff raced to the courthouse to file this action based on a threat of litigation, review of the briefs as well as the annexed affidavits and exhibits reveals that such is not the case. Instead, it appears that the parties attempted to engage in mediation of their dispute on multiple occasions, but that contemporaneous email interactions between the executives discussed above caused such voluntary mediation

attempts to founder.

B. **Discussion**

Having removed this action to this court, defendants cannot argue that the Western District of North Carolina is an improper forum for resolution of this dispute. Instead, defendants contend that this action should be transferred in accordance with 28, United States Code, Section 1404(a) to the District of Oregon, where it could have been brought originally, for the convenience of the parties and witnesses and in the interests of justice. Section 1404(a) provides, as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

In deciding a motion to transfer venue under Section 1404(a), courts must "weigh in the balance a number of case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). These factors include, but are not limited to, the following:

(1) the plaintiff's choice of forum;

(2) relative ease of access to sources of proof;

(3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses;

(4) possibility of a view of the premises, if appropriate;

(5) enforceability of a judgment, if one is obtained;

(6) relative advantage and obstacles to a fair trial;

(7) other practical problems that make a trial easy, expeditious, and inexpensive;

(8) administrative difficulties of court congestion;

(9) local interest in having localized controversies settled at home;

(10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and

(11) avoidance of unnecessary problems with conflicts of laws.

See Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F. Supp. 93 (W.D.N.C. 1990); CapitalSource Finance LLC v. B & B Contractors, Inc., 2005 WL 1025953 (D.Md. 2005).

In order to determine whether transfer is proper, a balance must be struck between the competing interests. Unless the balance is tipped strongly in favor of the moving party, Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984), plaintiff's choice of forum should not be disturbed. Upon a motion to transfer, the moving party carries the burden and the burden is heavy. Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F. Supp. 446, 451 (W.D.N.C. 1989).

A defendant carries a particularly heavy burden when it moves pursuant to [Section] 1404(a) to transfer an action from a district where venue is proper. As this court has noted previously, it is "black letter law," that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice . . . should not be lightly disturbed."

Phillips v. S. Gumpert Co., Inc., 627 F. Supp. 725, 726-27 (W.D.N.C. 1986) (citations omitted).

The court has carefully considered each of the eleven factors. Each factor will be discussed below.

### 1. The Plaintiff's Choice of Forum

While plaintiff argues the first to file rule mandates giving such choice great weight, defendants argue that the anticipatory filing exception dictates an opposite result. The court has carefully considered the memoranda of counsel as well as the exhibits annexed thereto. "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp.2d 357, 360 (W.D.N.C. 2003). Defendants argue that the anticipatory filing exception to that rule should be invoked because

> [d]efendants made multiple attempts to mediate the dispute in order to resolve the financial issues between the parties. Hamilton Decl., ¶¶ 18-19. Finally, on June 1, 2010, Defendants sent ASNI a demand indicating that they planned to file suit against ASNI if the parties did not come to an agreement by June 15, 2010. Hamilton Decl., ¶ 20. This

was a true threat of litigation and a genuine attempt to resolve
Defendants' complaints against ASNI without resort to the court system.

Memorandum in Support, at p. 11. Plaintiff argues in response that

. . . Plaintiff ASNI filed suit in Buncombe County Superior Court after months of being completely frustrated in its efforts to obtain information from Defendants about apparent quality problems with products being sold by Defendants to Plaintiff. During those months, Defendants' President made so many threats of litigation that Plaintiff became convinced those threats were a ploy to avoid discussion of the product defects.

Response, at p. 3. Review of the evidentiary materials submitted reveals that defendants had indeed regularly threatened plaintiff with suit; while defendants contend that the June 1 threat "was a true threat of litigation," Memorandum in Support, at p. 11, how plaintiff was to distinguish between true and mendacious threats of litigation is left unexplained.

Application of the first to file rule is a equitable consideration, <u>Nutrition & Fitness, Inc.</u>, and so must be the application of the anticipatory filing exception. If the exception were to be applied in this case, potential litigants would be encouraged to make continual and "untrue" threats of litigation simply to be able to invoke anticipatory filing exception. Although counsel for defendants do an excellent job painting defendants as reasonable parties holding off on filing suit while attempting to mediate - - an argument which would generally be supportive of invocation of the exception- -the emails from defendants' president disconfirm that notion. Such person

apparently communicated threats the filing of litigation earlier in the year in March 2010 which did not occur. Defendants concede as much in their Reply. Reply, at p. 3. Defendants argue that they did not follow through with the threats because plaintiff responded with some type of partial payment offer, settlement offer, or mediation offer. Id.

In the final analysis, the court cannot fault plaintiff for filing this action in this district as it is the district in which it has its production facilities. Affidavit of Clive Adams, at ¶ 8. Further, the tenor of the emails sent by defendants' president would lead a reasonable person to believe that no amicable resolution could be reached with defendants, even through mediation, as the correspondence from defendants' president had degenerated to vulgar, personal attacks on the character of plaintiff's founder. The court simply cannot find that such filing in this district was anticipatory inasmuch as plaintiff had no reason to believe that defendant's June 2010 threat was any more real than the March 2010 threat. Inasmuch as defendants had previously threatened litigation, there is no reason not to believe that plaintiff's filed this action in this district when it did for the reasons given by Mr. Adams in his affidavit. Id., at 18-19.

The first factor weighs heavily in favor of keeping this action in this district.

### 2. Relative Ease of Access to Sources of Proof

The court agrees with the defendants' analysis of this factor, inasmuch as most, if not all, documents should be easily accessible by both parties electronically. The results of laboratory tests on the algae products at issue can be shared electronically. This factor is neutral.

### 3. Availability of Compulsory Process for Attendance of Unwilling Witnesses, and the Cost of Obtaining Attendance of Willing and Unwilling Witnesses

The court agrees with defendants that most of the witnesses concerning the quality issues and analysis of the product are located in the Pacific Northwest. No forecast is made as to such witnesses being unwilling to travel to the Western District of North Carolina. It is apparent that the costs of obtaining the testimony of most witnesses would be less in Oregon. This factor favors transfer.

### 4. Possibility of a View of the Premises, if Appropriate

While this court is aware that the lake from which algae is taken, the plants at which such substance is processed, and labs at which substance is analyzed, are all located in the Pacific Northwest, the court cannot imagine that a jury view of the premises would be required. Equally, a jury view of the plant where such raw products are turned into supplements simply would be unnecessary. If any views were required, such could be easily accomplished through the production of a digital film. This factor is neutral.

### 5. Enforceability of a Judgment, if One is Obtained

This factor is also neutral inasmuch as a judgment obtained in a federal court in Oregon is - - as is a judgment obtained in this court - - enforceable nationwide.

### 6. Relative Advantage and Obstacles to a Fair Trial

This factor is neutral in that a fair trial can be obtained in any federal court for either side.

### 7. Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive

There appear to be no other practical problems outside of the factors previously considered that make trial any easier here than in Oregon. This factor is neutral.

### 8. Administrative Difficulties of Court Congestion

There appears to be no significant difference in court congestion. Indeed, the civil docket of theAsheville Division of the Western District of North Carolina is currently without a backlog. This factor is neutral.

### 9. Local Interest in Having Localized Controversies Settled at Home.

The interest in having this dispute, and any counterclaims, resolved in this district is counterbalanced by nearly identical interests in the District of Oregon. While it is clear that the unique raw product is harvested and process in Oregon, such product is turned into a product for retail sale in this district. The dispute that has

arisen cannot be localized to either Oregon or North Carolina, as it impacts not only businesses but workers in both jurisdictions. This factor is neutral.

### 10. Appropriateness in Having a Trial of a Diversity Case in a Forum that is at Home with the State Law that Must Govern the Action

Defendants contend that the breach of contract action should be governed by Oregon law, but have pointed to no unique aspects of Oregon contract law that would be difficult for this court to apply. On the other hand, plaintiff has also alleged tortious interference with contract, unfair and deceptive trade practices, all of which are arguably governed by North Carolina law. This factor is neutral.

### 11. Avoidance of Unnecessary Problems with Conflicts of Laws

No problems have been identified, making such factor neutral.

\* \* \*

The court, having considered all factors both quantitatively and qualitatively finds that one factor favors retention and one factor favors transfer. Quantitatively, it's a dead heat. Qualitatively, however, plaintiff's choice of forum must be given greater weight than the costs saving that may be realized through prosecuting this action in Oregon. The motion will, therefore, be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Motion to Transfer (#2) is **DENIED.**

Signed: September 17, 2010

Dennis L. Howell
United States Magistrate Judge